```
           UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

TIMOTHY E. PROFFITT and
NANCY J. PROFFITT,

    Plaintiffs

v.                              Civil Action No. 2:09-1180

GREENLIGHT FINANCIAL SERVICES, a corporation, and
AMERICA'S SERVICING COMPANY, a corporation, and
U.S. BANK NATIONAL ASSOCIATION, as Trustee for
MASTR ASSET BACKED SECURITIES TRUST, 2006-WMC 2 and
WMC MORTGAGE CORPORATION n/k/a WMC MORTGAGE, LLC,
a corporation,

    Defendants

## MEMORANDUM OPINION AND ORDER

Pending are (1) WMC Mortgage Corporation's ("WMC") motion to dismiss Counts Two through Six, filed January 18, 2011, (2) the joint motion by America's Servicing Company ("ASC") and U.S. Bank National Association ("U.S. Bank"), as trustee for MASTR Asset Backed Securities Trust, 2006-WMC 2, to join WMC's motion to dismiss, filed March 21, 2011, (3) Greenlight Financial Services' ("Greenlight") motion to join WMC's motion to dismiss filed March 22, 2011, and (4) plaintiff Nancy J. Proffitt's and Timothy E. Proffitt's motion to strike the motions to join, filed March 24, 2011.[1]

---

[1] The Proffitts received two extensions of time by stipulation to respond to WMC's motion to dismiss. The extensions resulted in their response brief not being filed until March 2, 2011. Inasmuch as briefing intervals are set by the Local Rules of Civil Procedure, counsel must in the future seek leave of court when an extension is necessary.

I.

Plaintiffs Timothy E. and Nancy J. Proffitt are West Virginia residents.  They are the borrowers on the loan at the center of this controversy.  Greenlight, a California corporation, is the lender.  WMC, also a California corporation, is the loan originator.  ASC, an Iowa corporation, is the loan servicer.  U.S. Bank, an Ohio citizen, is the loan holder.

Greenlight solicited the Proffitts through a television advertisement.  The Proffitts thereafter phoned Greenlight and provided certain financial information.  Greenlight encouraged the Proffitts to refinance several thousand dollars worth of unsecured debt into a refinanced mortgage loan.  The Proffitts agreed.

Greenlight arranged to appraise the Proffitts' residence.  That analysis overvalued the home, which was in actuality worth about $76,500.  The transaction at issue ultimately caused the Proffitts to take on $115,006.25 in indebtedness, well above the home's actual value.

Greenlight scheduled the closing for December 23, 2005, at a McDonald's restaurant in Parkersburg.  The Proffitts

received no documents in advance.  The late evening closing was attended by the Proffitts and a non-lawyer, presumably on behalf of Greenlight.  There was no explanation of the documents or any time for questions at the rushed meeting.  The Proffitts were simply told where to sign and initial.  They now say the loan "was loaded" with excessive fees and costs.  (Am. Compl. ¶ 15).

The Proffitts paid on the loan as agreed for awhile.  Around May 2006, ASC took over the loan's servicing rights.  That same year Mr. Proffitt's salary decreased due to a job transfer.  ASC initially offered to consider an accommodation at the Proffitts' request.  It told them to send in certain financial information and cease their monthly payments.

The Proffitts waited for several months, calling periodically to inquire about when they would receive a new payment schedule.  They were told by ASC to be patient and not submit any payments.  Several months later, the Proffitts received the long-awaited offer from ASC.  They were told to send four monthly installments that were higher than their regular payments.  The Proffitts did so.  ASC commenced foreclosure proceedings immediately thereafter.

In late 2007, while facing foreclosure, the Proffitts pleaded for another loan modification. They submitted further financial information to ASC. While that modification request was under consideration, the Proffitts arranged for two mortgage payments to be automatically deducted from their checking account in February 2008 to avoid more arrearages. ASC refused to receive the payments. It told the Proffitts to send more financial information, "sit tight," and not send any more payments. (Id. ¶ 24).

The Proffitts contacted ASC again about the loan modification after an unspecified period of time passed. ASC said it had not received their paperwork. The Proffitts sent it again by certified mail. When the Proffitts called back some time later, ASC again denied receiving the materials. The Proffitts, however, mentioned their return receipt signed by an ASC agent. There is no discussion in the complaint about ASC's response to that receipt confirmation.

An unspecified period of weeks passed with the Proffitts contacting ASC at various times. They were told the same instructions as recounted above, presumably to wait and see and not send further payments. In April 2008, they received from ASC a notice of foreclosure. A proposed loan modification

4

followed in July 2008. It increased both their indebtedness and payments. The interest rate was 10.375%. The Proffitts, fearing foreclosure, agreed.

On September 30, 2009, the Proffitts instituted this action against ASC, U.S. Bank, and Greenlight. They alleged claims for (1) unconscionable inducement (Count One), (2) fraud and conspiracy (Count Two), (3) breach of contract (Count Three), (4) estoppel (Count Four), and (5) illegal debt collection (Count Five). On October 28, 2009, ASC and U.S. Bank removed and answered. On November 4, 2009, Greenlight answered. None of the three defendants moved pursuant to Federal Rule of Civil Procedure 12(b)(6).

On November 18, 2010, the court allowed the filing of the amended complaint. The new pleading added WMC as a party defendant and appended an additional claim for "JOINT VENTURE AND AGENCY." (Am. Compl. at 12). On November 23, 2010, ASC and U.S. Bank answered. On December 7, 2010, Greenlight did likewise. Again, none of these three defendants moved pursuant to Rule 12(b)(6).

On December 28, 2011, WMC was served. On January 18, 2011, it answered and moved to dismiss Counts Two through Six. On March 2, 2011, the Proffitts noticed their voluntary dismissal

5

of Count Two. On March 21, 2011, the Proffitts and WMC stipulated that Counts Three, Four, and Five are mortgage loan servicing claims that are not directed against WMC. WMC's challenge to the amended complaint thus now consists of a dismissal request directed only at Count Six.

On March 21, 2011, ASC and U.S. Bank moved to join WMC's motion to dismiss. Greenlight did the same the next day. These requests came one week after the briefing on WMC's dispositive motion had concluded. The motions to join, consisting in substance of one page, are aptly characterized as <u>pro</u> <u>forma</u>. The filing by ASC and U.S. Bank states that it "join[s] in and support[s] the . . . [motion to dismiss] as if these Defendants were a party to such Motion . . . . [and] request that this Court extend to these Defendants the relief sought by the" motion to dismiss. (Mot. to Join at 1). The request in Greenlight's motion to join is materially identical.

II.

A.   Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" <u>Erickson</u>, 127 S. Ct. at 2200 (quoting <u>Twombly</u>, 127 S. Ct. at 1965); <u>see also</u> <u>South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co.</u>, 372 F.3d 245, 255 (4th Cir. 2004) (quoting <u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002)).  The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

B.   Discussion

The material portions of Count Six of the amended complaint allege as follow:

> 58. Each Defendant had an agreement, either written, oral, constructive, or otherwise for a single business enterprise, that is the closing and servicing of the loan at issue in this case.
>
> 59. Each Defendant shared in the profits and/or losses of the single business enterprise.
>
> 60. Defendants combined their money, skill and/or knowledge to carry out this single business enterprise.
>
> 61. Each of the acts of the Defendants were done in furtherance of a joint venture in which each of the acts of the Defendants were pursued with a joint purpose, and each of the acts of one is the act of the others.

> 62. The Defendant lender exercised a degree of control over the other originating defendants in carrying out the single business enterprise.
>
> 63. Defendant holder exercised control over the remaining Defendants in carrying out the single business enterprise.
>
> 64. At all times relevent [sic] hereto, the acts of the originating defendants were conducted as agent for Defendant lender. Additionally, the acts of lender and servicer were done as an agent for Defendant holder. Each of the Defendants' acts were conducted as part of the principal-agency relationship between the Defendants.

(Am. Compl ¶¶ 58-64). At the conclusion of the amended complaint, the Proffitts seek only "a declaration that each Defendant is jointly and severally liable for the actions described herein." (Am. Compl. at Wherefore Clse.).

WMC offers a two-fold argument for dismissal. It first asserts that joint venture and agency are theories of liability but not separate causes of action. It relies heavily upon the decision in Dunn v. Rockwell, 225 W. Va. 43, 689 S.E.2d 255 (2009). In Dunn, the Supreme Court of Appeals of West Virginia noted that civil conspiracy "is not a per se, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." Id. at syl. pt. 1, 225 W. Va at 46, 689 S.E.2d at 258.

9

The court's recent decision in <u>Croye v. GreenPoint Mortg. Funding, Inc.</u>, 740 F. Supp.2d 788 (S.D. W. Va. 2010), discussed the application of <u>Dunn</u> to a joint venture theory:

> The court is not persuaded by the analogy GreenPoint draws from <u>Dunn</u>. The language in <u>Dunn</u> does not suggest that civil conspiracy is not a permissible cause of action generally. It simply states that it is not a claim that can stand alone without claims for the underlying torts. Here, plaintiffs have alleged joint venture in addition to those claims for which it seeks to impose joint venture liability. Significantly, <u>Dunn</u> did not result in the dismissal of the civil conspiracy claim for failure to state a cognizable cause of action. Rather, the court assigned the applicable statute of limitations for the underlying tort claims to the civil conspiracy claim in order to determine whether it was time barred. Moreover, plaintiffs in several West Virginia cases have asserted joint venture claims wherein the concept of joint venture has been recognized.

<u>Id.</u> at 799.  As in <u>Croye</u>, the Proffitts have pled against defendants at least one substantive claim in addition to Count Six, namely, the Count One claim for unconscionable conduct. The court thus rejects WMC's first contention based upon <u>Croye</u>.

WMC next contends that the allegations in the amended complaint are insufficient to state a claim for joint venture or agency liability.  Under West Virginia law, a joint venture "'is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge.'"  <u>Croye</u>,

10

740 F. Supp.2d at 800 (quoting Armor v. Lantz, 207 W. Va. 672, 535 S.E.2d 737, 742 (2000) (citations omitted)).

In ascertaining the existence of a joint venture, one looks for (1) a contract between the joint venturers establishing their relationship, (2) a combination by them of property, money, efforts, skill, or knowledge, in some common undertaking of a special or particular nature, (3) a design to share profits and, perhaps, losses, and (4) the exercise of control over the joint venture by the participants.  See Croye, 740 F. Supp.2d at 800 (citations omitted).

Paragraphs 58 through 64, set out in Count Six, are bereft of any factual substance.  The allegations constitute no "'more than . . . a formulaic recitation of the elements of a cause of action'" that are insufficient to satisfy Rule 8(a)(2).  Glassman v. Arlington County, 628 F.3d 140, 146 (4th Cir. 2010) (quoting Twombly, 550 U.S. at 555).  This ground for dismissal asserted by WMC is thus meritorious.

The court, accordingly, ORDERS that Count Six be, and it hereby is, dismissed without prejudice.

**C.  Motions to Join and to Strike**

Defendants ASC, U.S. Bank, and Greenlight are referred to collectively as "the moving defendants" in this section.  As noted, the joint motion by ASC and U.S. Bank, and the separate motion by Greenlight, to join WMC's motion to dismiss request that the court "extend to [the moving defendants] . . . the relief sought by the Motion to Dismiss filed by WMC . . . and dismiss Counts II, III, IV, V and VI as to these defendants." (Jt. Mot. to Join at 1; compare Mot. to Join at 1).

In their motion to strike, the Proffitts note that a Rule 12(b)(6) motion by the moving defendants would have been untimely at the point the joinder requests were filed.  Indeed, the moving defendants delayed their respective joinder requests until the briefing on WMC's motion to dismiss had concluded.

In view of these circumstances, and noting that Count Six fails to state a claim, the court will grant the motion to strike in all respects except that the moving defendants will benefit from the relief granted WMC in the preceding section.  In sum, Count Six is dismissed as to the moving defendants as well as WMC.

**III.**

Based upon the foregoing discussion, it is ORDERED as follows:

1. That Count Six be, and it hereby is, dismissed without prejudice;

2. That, in the event the Proffitts wish to attempt to replead that count, any amended complaint must be filed no later than May 9, 2011;

3. That the joint motion by ASC and U.S. Bank, and the separate motion by Greenlight, to join WMC's motion to dismiss, be, and it hereby is, granted with respect to that portion of the motion seeking the dismissal of Count Six and denied in all other respects; and

4. That the Proffitts' motion to strike the moving defendants' motions to join be, and it hereby is, granted in all respects except insofar as the motions to join seek the dismissal of Count Six.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: April 19, 2011

John T. Copenhaver, Jr.
United States District Judge